1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11

E.N.,

No. 1:26-cv-00406-DC-EFB (HC)

12

Petitioner,

13

v.

ORDER GRANTING IN PART
PETITIONER'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND
ISSUING PRELIMINARY INJUNCTION

14

SERGIO ALBARRAN, et al.,

15

Respondents.

16

(Doc. No. 2)

17
18

  This matter is before the court on Petitioner's motion for temporary restraining order

19

(Doc. No. 2), filed in conjunction with his petition for a writ of habeas corpus brought under 28

20

U.S.C. § 2241, challenging his ongoing immigration detention. (Doc. No. 1.) For the reasons

21

explained below, the court will grant in part Petitioner's motion for a temporary restraining order

22

and will issue a preliminary injunction on the same terms.

23

**BACKGROUND**

24

**A.    Factual Background**

25

  Petitioner is an Afghan citizen who first entered the United States on or about October 22,

26

2021. (Doc. No. 1 at ¶ 16.) Upon his arrival, the U.S. Department of Homeland Security ("DHS")

27

granted Petitioner four years of humanitarian parole under the Operation Allies Refuge

28

designation. (*Id.*)

1

On January 13, 2023, Petitioner entered a no-contest plea to two misdemeanor counts of annoying and molesting a child, in violation of California Penal Code § 647.6(a). (*Id.* at ¶ 17.) He was sentenced to time served and has completed all the terms of his sentence. (*Id.*)

On February 9, 2023, Petitioner filed an application for asylum with U.S. Citizenship and Immigration Services ("USCIS"). (*Id.* at ¶ 18.)

On November 16, 2023, U.S. Immigrations and Customs Enforcement ("ICE") apprehended and detained Petitioner pursuant to a warrant for arrest of alien charging him with being an immigrant who did not have valid entry documents at the time of his application for admission in violation of 8 U.S.C. § 1182(a)(7)(A)(i). (*Id.*) On February 14, 2024, DHS added a factual allegation that Petitioner had remained in the United States after his parole had expired. (*Id.*)

On March 18, 2024, Petitioner renewed in immigration court his application for asylum, withholding of removal, and protection under the Convention Against Torture. (*Id.* at ¶ 19.) On May 7, 2024, an immigration judge denied Petitioner's application for asylum and withholding of removal due to his criminal convictions and entered an order of removal against Petitioner to Afghanistan. (*Id.* at ¶ 19.) The immigration judge, however, granted Petitioner's stipulated application for deferral of removal under the Convention Against Torture, finding that Petitioner met his burden of proof of establishing that it was more likely than not that Petitioner would be tortured if removed to Afghanistan. (*Id.*) On December 30, 2024, DHS released Petitioner from its custody pursuant to 8 U.S.C. § 1231(a)(3). (*Id.* at ¶ 20.) Petitioner was placed on an order of supervision and has complied with all terms of that order since his release. (*Id.*)

On December 2, 2025, Petitioner was arrested by ICE agents as he walked home from work.[1] (*Id.* at ¶ 21.) Petitioner informed the arresting ICE agents that he had a deferral of removal under the Convention Against Torture, but the ICE agents told him that they did not care. (*Id.* at ¶ 21.) The ICE agents presented Petitioner with unidentified papers, some of which he signed but

---

[1] Neither party attached immigration documents as exhibits to their briefing. Accordingly, all information regarding Petitioner's removal status is taken from the factual allegations in Petitioner's habeas petition. (Doc. No. 1.) Respondents do not dispute the accuracy of these allegations in their opposition. (Doc. No. 8.)

did not understand due to his limited English proficiency. (*Id.*) Both Petitioner and his counsel have attempted to obtain this paperwork from ICE, but ICE has not responded to those requests. (*Id.* at ¶¶ 22–23.) Petitioner does not believe he was provided a revocation of release from ICE nor informed that he violated the terms of his release, or that changed circumstances warrant his re-detention. (*Id.* at ¶ 24.) ICE agents informally informed Petitioner that he would be removed to a third country, but ICE has not identified any such country. (*Id.*)

Petitioner is currently detained at the Mesa Verde ICE Processing Facility in Bakersfield, California. (*Id.* at ¶ 10.)

**B.    Procedural Background**

On January 20, 2026, Petitioner filed a habeas petition pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) In the petition, Petitioner asserts claims for (1) violation of the Fifth Amendment to the U.S. Constitution in relation to his re-detention by Respondents without a hearing, and his continued detention despite his removal not being reasonably foreseeable; (2) violation of the Immigration and Nationality Act ("INA") and other applicable regulations in relation to his re-detention and continued detention; and (3) violation of the Fifth Amendment to the U.S. Constitution in relation to his potential removal to a third country without adequate notice and opportunity to be heard. (*Id.* at 21–24.) Petitioner seeks a declaration that his detention is unlawful and an order requiring Petitioner's immediate release under his prior order of supervision, requiring Respondents to return Petitioner's possessions and immigration documents, mandating that Petitioner not be re-detained unless he is provided a constitutionally compliant pre-deprivation hearing before a neutral decisionmaker, and mandating that Petitioner not be removed to a third country absent sufficient notice and opportunity to present a fear of removal to that country. (*Id.* at 25.)

On that same day, Petitioner filed the pending motion for temporary restraining order in which he seeks the same relief requested in his habeas petition. (Doc. No. 2 at 36–37.)

On January 26, 2026, Respondents filed an opposition to Petitioner's motion for a temporary restraining order in which they argue that Petitioner's detention is lawful because his removal is reasonably foreseeable. (Doc. No. 8 at 1.) Respondents also indicate that they have no

1    opposition to the court's consideration of the pending motion for a temporary restraining order as

2    a motion for preliminary injunction. (*Id.* at 1 n.1.)

3         On January 27, 2026, Petitioner filed a reply in which he also indicates that he does not

4    oppose treating the motion for temporary restraining order as a motion for preliminary injunction.

5    (Doc. No. 9.)

6                                    **LEGAL STANDARD**

7         Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear

8    showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555

9    U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary

10   restraining order is "substantially identical" to the standard for issuing a preliminary injunction.

11   *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To

12   obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on

13   the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary

14   relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction

15   is in the public interest. *Winter*, 555 U.S. 7, 20 (2008). The likelihood of success on the merits is

16   the most important *Winter* factor. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th

17   Cir. 2017).

18        A party seeking injunctive relief must make a showing on all four prongs of the *Winter*

19   factors to obtain injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th

20   Cir. 2011); *see Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction

21   is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a

22   clear showing, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968,

23   972 (1997)). A district court may consider "the parties' pleadings, declarations, affidavits, and

24   exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle*

25   *& Pistol Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024);

26   *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues

27   "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los*

28   *Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

                                              4

**DISCUSSION**

**A.    Likelihood of Success on the Merits**

Petitioner contends that he is impermissibly detained under 8 C.F.R. § 241.13 because Respondents revoked his previous release on an order of supervision without cause and without abiding by the requisite regulatory procedures. (Doc. No. 2 at 17–18.) Specifically, Petitioner argues that he was re-detained despite there being no evidence (1) that he violated the terms of his order of supervision, (2) that his removal was reasonably foreseeable, and/or (3) that other changed circumstances warranted his re-detention. (*Id.*)

In their opposition, Respondents agree that Petitioner's detention is governed by § 241.13 but contend that Petitioner's "re-detention is authorized because the United States has determined that removal is now reasonably foreseeable." (Doc. No. 8 at 3.) Respondents do not clarify whether Petitioner's removal is foreseeable to his native Afghanistan, or to an unidentified third country.

Section 241.13 applies to noncitizens[2] "who are subject to a final order of removal and are detained . . . after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). The parties do not dispute that Petitioner is subject to a final order of removal to Afghanistan, that Petitioner's removal to Afghanistan has been deferred pursuant to the Convention Against Torture,[3] and that Petitioner's removal period has expired.[4]

---

[2] This order uses the term "noncitizen" as equivalent to the statutory term "alien." *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020).

[3] The Convention Against Torture provides mandatory protection from removal for any noncitizen who shows that "it is more likely than not that the alien would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16.

[4] The removal period is the three-month period after an order of removal becomes final. 8 U.S.C. §§ 1231(a)(1)(A), (B). A noncitizen is mandatorily detained during the removal period. *Id.* § 1231(a)(2)(A). Here, Petitioner's removal order to Afghanistan became final for purposes of the removal period on October 4, 2024, when the Board of Immigration Appeals dismissed his appeal of the order denying his asylum claim. 8 U.S.C. § 1231(a)(1)(B)(ii). Thus, Petitioner's removal period expired on January 4, 2025.

1    Section 241.13(i) permits the revocation of release of a noncitizen subject to a removal

2  order where, "on account of changed circumstances, [ICE] determines that there is a significant

3  likelihood that the alien may be removed in the reasonably foreseeable future."[5] 8 C.F.R. §

4  241.13(i). Where ICE determines that changed circumstances render a noncitizen's removal

5  reasonably foreseeable, § 241.13 requires that "[u]pon revocation, the alien will be notified of the

6  reasons for revocation of his or her release." 8 C.F.R. § 241.13(i)(3). Further, § 241.13 requires

7  that ICE "conduct an initial informal interview promptly after [the noncitizen's] return to []

8  custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in

9  the notification." *Id.* At that informal interview, the noncitizen "may submit any evidence or

10  information that he or she believes shows that there is no significant likelihood he or she [will] be

11  removed in the reasonably foreseeable future, or that he or she has not violated the order of

12  supervision." *Id.*

13    Here, neither party alleges that Petitioner was given notice of the reason for revocation of

14  his release, or that Petitioner was provided an informal interview where he was able to respond to

15  that proffered reason. (*See* Doc. Nos. 2, 8.) Thus, Respondents have violated their own

16  regulations in effectuating the revocation of Petitioner's release.

17    Further, while Respondents now contend that Petitioner's re-detention is authorized

18  because the "United States has determined that removal is now reasonably foreseeable," (Doc.

19  No. 8 at 3), Petitioner may not be removed to Afghanistan due to his protection from removal

20  under the Convention Against Torture, and Respondents do not identify any alternative country to

21  which they are prepared to remove Petitioner. (*See* Doc. No. 8.) To justify revocation of release, §

22  241.13 does not merely require that the government show that there is a *potential* for future

23  removal, but that "there is a *significant likelihood* that the alien may be removed in the reasonably

24  foreseeable future." 8 C.F.R. § 241.13(i)(2) (emphasis added). Respondents submit no evidence

25  demonstrating a significant likelihood that Petitioner will be removed in the reasonably

26

27  ───────────────
   [5] Section 241.13 also permits revocation of release where a noncitizen "violates any of the
   conditions of release" in the "order of supervision." 8 U.S.C. § 241.13(i)(1). Respondents do not
28  allege that Petitioner violated any condition of his order of supervision. (*See* Doc. No. 8.)

foreseeable future; the mere allegation by Respondents that they have made such a determination is insufficient. *Nguyen v. Albarran*, No. 1:25-cv-1926-CSK, 2026 WL 184513, at *5 (E.D. Cal. Jan. 23, 2026) (holding that a declaration from a deportation officer stating that ICE "began the process of requesting travel documents" from the removal country was insufficient under section 241.13 because "Respondents have not provided any evidence demonstrating that petitioner's removal is significantly likely, and thus failed to meet their burden to show a significant likelihood that petitioner will be removed in the reasonably foreseeable future."). Indeed, here Respondents have not provided any evidence that they have begun the process of obtaining travel documents.

Accordingly, there is a significant likelihood that Petitioner will succeed on the merits of his claim that Respondents violated the INA and applicable regulations by revoking Petitioner's release without conducting an informal interview and without demonstrating a significant likelihood of Petitioner's removal in the reasonably foreseeable future.[6][7]

**B.    Irreparable Harm**

A party seeking preliminary injunctive relief must make a "clear showing" of a likelihood of irreparable harm in the absence of the relief requested. *Winter*, 555 U.S. at 22. The "Ninth

---

[6] Because the court will grant Petitioner's motion for a temporary restraining order based on his likelihood of succeeding on the merits of his regulatory claim, the court does not address Petitioner's constitutional claims in this order.

[7] In addition to requesting his immediate release, Petitioner requests that the court issue an order requiring that Respondents provide him notice and an opportunity to apply for a fear-based defense to removal before Respondents may remove him to a third country. (Doc. No. 2 at 28–32.) Because this order will require Petitioner's immediate release and that Respondents provide Petitioner the opportunity to contest his re-detention should Respondents seek to detain him to effectuate a future removal, and because there is no evidence Respondents have identified a third country for Petitioner's removal, the court will deny Petitioner's request as too speculative to warrant injunctive relief at this juncture. *Morales Sanchez v. Bondi*, No. 5:25-cv-02530-AB-DTB, 2025 WL 3190816, at *4 (C.D. Cal. Oct. 3, 2025) (denying motion for temporary restraining order relating to third country removal procedures where "Petitioner has not identified the specific third country for possible removal, nor demonstrated that Respondents intend to remove him imminently without notice."); *Dao v. Bondi*, No. 2:25-cv-02340-LK, 2026 WL 18626, at *6 n.6 (W.D. Wash. Jan. 2, 2026) (same) (collecting cases). However, the court will deny this request without prejudice and notes that it has previously provided the relief sought by Petitioner to noncitizens facing an imminent threat of third country removal. *See, e.g., A.A.M. v. Andrews*, No. 1:25-cv-01514-DC-DMC, 2025 WL 3485219 (E.D. Cal. Dec. 4, 2025).

1  Circuit has recognized the 'irreparable harms imposed on anyone subject to immigration

2  detention' including 'subpar medical and psychiatric care in ICE facilities.'" *Hoac v. Becerra*,

3  No. 2:25-cv-01740-DC-JDP, 2025 WL 1992771, at *3 (E.D. Cal. July 16, 2025) (quoting

4  *Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017)).

5        Here, Petitioner alleges that he will suffer irreparable harm absent injunctive relief

6  because of the detention conditions at Mesa Verde ICE Processing facilities. (Doc. No. 2 at 33.)

7  Specifically, Petitioner alleges that multiple detainees have recently become ill with an

8  unspecified illness that facility staff has been unable to identify or contain. (*Id.*) Further,

9  Petitioner alleges that the Mesa Verde facility has suffered facility-wide water outages rendering

10  detainees unable to wash their hands, flush toilets, or maintain basic hygiene. (*Id.*) Finally,

11  Petitioner notes that his detention keeps him separated from his family, who rely on him for

12  financial and emotional support, as well as his employer, community, and mosque, where he

13  volunteers. (*Id.*)

14        Respondents do not address any of those allegations or the issue of irreparable harm in

15  their opposition. (*See* Doc. No. 8.) Having considered the irreparable harm identified by

16  Petitioner, the court finds the second *Winter* factor weighs in favor of granting Petitioner's

17  request for injunctive relief.

18  **C.    Balance of Equities and Public Interest**

19        The court now turns to the last two *Winter* factors. The balance of equities and public

20  interest analyses merge when the government is the opposing party, as is the case here. *See*

21  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556

22  U.S. 418, 435 (2009)).

23        "In cases implicating removal, 'there is a public interest in preventing [noncitizens] from

24  being wrongfully removed, particularly to countries where they are likely to face substantial

25  harm.'" *Nguyen v. Scott*, 796 F. Supp. 3d 703, 739 (W.D. Wash. 2025) (quoting *Nken*, 556 U.S. at

26  436). Despite any interest the government may have in promptly executing removal orders, "our

27  system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of*

28  *Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet &*

1    *Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)).

2            Finally, that Petitioner has shown a likelihood of success on the merits tips the public

3    interest further in his favor. *Riley's Am. Heritage Farms v. Elasser*, 32 F.4th 707, 731 (9th Cir.

4    2022) (quoting *Melendres*, 695 F.3d at 1002).

5            Therefore, the third *Winter* factor also weighs in favor of granting Petitioner's request for

6    injunctive relief. Because all three *Winter* factors weigh in Petitioner's favor, the court finds that

7    injunctive relief is warranted. And, because neither party objects to converting Petitioner's

8    motion for temporary restraining order into a motion for preliminary injunction (*See* Doc. Nos. 2,

9    8), the court will issue a preliminary injunction on the same terms. *Doe v. Becerra*, 787 F. Supp.

10   3d 1083, 1090 (E.D. Cal. 2025) (converting motion for temporary restraining order into motion

11   for preliminary injunction where the respondents had notice and the opportunity to respond, and

12   there was no benefit in additional briefing.)

13   **D.     Bond**

14           Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief

15   "only if the movant gives security in an amount that the court considers proper to pay the costs

16   and damages sustained by any party found to have been wrongfully enjoined or restrained."

17   *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)).

18   "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion

19   as to the amount of security required, if any.'" *Id.* (quoting *Jorgensen v. Cassiday*, 320 F.3d 906,

20   919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond

21   when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or

22   her conduct.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen*, 320 F.3d at 919). Petitioner

23   requests that the court not require him to post security because it is unlikely any harm will come

24   to Respondents as a result of his requested temporary relief, and because Respondents will likely

25   incur negligible financial costs. (Doc. No. 2 at 36.) Respondents do not address bond in their

26   opposition.

27           The court finds that no security is required here. Courts regularly waive security in cases

28   like this one. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-

1    01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-

2    cv-05632- RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

3                                                    **CONCLUSION**

4          For the reasons explained above,

5          1.      Petitioner E.N.'s motion for a temporary restraining order (Doc. No. 2) is

6                   converted into a motion for preliminary injunction;

7          2.      Petitioner E.N.'s motion for preliminary injunction (Doc. No. 2) is GRANTED IN

8                   PART as follows:

9                   a.      The court ORDERS that Respondents release Petitioner immediately upon

10                          the same conditions he was previously released in his December 2024

11                          order of supervision;

12                  b.      Respondents are ENJOINED AND RESTRAINED from re-detaining

13                          Petitioner absent compliance with the requirements of 8 C.F.R. § 241.13

14                          for revocation of release, and any other applicable statutory and regulatory

15                          procedures;

16                  c.      Respondents are ORDERED to return to Petitioner all property confiscated

17                          from him during his arrest and processing into detention, including but not

18                          limited to any personal identification, employment authorization document,

19                          medical insurance card, and money, and provide him or his attorney copies

20                          of ICE documents he signed and/or refused to sign; and

21         3.      This matter is referred to the assigned magistrate judge for further proceedings.

22

23         IT IS SO ORDERED.

24    Dated:    **January 29, 2026**                    _____

                                                        Dena Coggins
25                                                      United States District Judge

26

27

28

                                                    10